UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Jose Martin Vega,

                              Petitioner,        CV-99-3229 (CPS)

    - against -                                  MEMORANDUM OPINION
                                                 AND ORDER

United States of America,

                              Respondent.
-----------------------------------------X

SIFTON, Senior Judge.

        Movant *pro se* Jose Martin Vega was sentenced to four

concurrent life sentences plus an additional ninety years in

prison, following conviction, after a fourteen week jury trial,

on fifteen counts.[1]  Following direct appeal of his conviction,

Vega filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2255, which was considered and denied by this Court on

September 29, 2001.  *See Vega v. United States,* CV-99-3229

(CPS)(E.D.N.Y. September 29, 2001).  Vega now moves pursuant to

Rule 60(b) of the Federal Rules of Civil Procedure to reopen this

_____

        [1] Petitioner was convicted of count 1, 18 U.S.C. § 1962(c) (RICO); count
2, 18 U.S.C. § 1962(d) (RICO conspiracy); count 30, 18 U.S.C. § 884(i)
(arson); count 31, 18 U.S.C. § 924(c)(1) (using and carrying a destructive
device in relation to a crime of violence); counts 32 and 33, 18 U.S.C.
§ 1959(a)(5) (conspiracy to murder in aid of racketeering); count 34, 18
U.S.C. § 1959(a)(1) (murder in aid of racketeering); count 35, 18 U.S.C.
§ 924(c)(1) (using and carrying a firearm in relation to crimes of violence);
count 37, 18 U.S.C. § 1959(a)(5) (murder conspiracy); count 38, 18 U.S.C.
§ 924(c)(1) (using and carrying of a firearm); count 40, 18 U.S.C.
§ 1959(a)(5) (murder conspiracy); count 41, 18 U.S.C. § 1959(a)(5) (murder
conspiracy); count 42, 18 U.S.C. § 1959(a)(3) (assault in aid of
racketeering); count 43, 18 U.S.C. § 924(c)(1) (carrying and using a firearm);
and count 44, 21 U.S.C. § 846 (conspiracy to distribute and possess with
intent to distribute cocaine base and heroin, all relating to the entire
scheme).

Court's denial of his § 2255 petition. Specifically, Vega claims that his sentences for convictions on Counts 31, 34, 35 and 44 were improper in light of the principles announced in *Blakely v. Washington,* 124 S.Ct. 2531 (2004).[2] The government opposes the present motion, and argues that the motion should be denied or, in the alternative, treated as a successive collateral attack and transferred to the Second Circuit for a gate-keeping decision pursuant to 28 U.S.C. § 2255. For the reasons stated below, the motion is denied.

### BACKGROUND

The following facts are essentially undisputed and are taken from court records, the parties' submissions in connection with the present motion, and the Memorandum and Order of this Court dated September 29, 2001, *Vega v. United States*, CV-99-3229 (CPS)(E.D.N.Y. September 29, 2001)("September 2001 Opinion"), denying Vega's § 2255 petition, familiarity with which is presumed.

The facts underlying Vega's conviction are set forth more fully on pages 4-8 of the September 2001 Opinion. A brief summary of those facts follows. Movant Vega, William and David Mora, Leo Contrera, and Love Brooks were each convicted after a

---

[2] Although Vega identifies *Blakely* as the sole basis for his motion, in his submissions to this Court, he appears to assert additional arguments that this Court erred in sentencing him on Counts 31, 35, 34 and 44. These additional arguments are also addressed in this opinion.

fourteen-week trial in the fall of 1995 of participating in the
Mora brothers' crack distribution gang (the "Mora gang" or the
"gang") in Brooklyn, New York. The trial detailed ten years of
crack dealing by the Mora gang and the violence used by the gang
in its attempt to maintain its territory. Vega became involved
in the gang's affairs several months before the gang came to an
end. Evidence relating to Vega's involvement in several violent
raids led by gang leader William Mora during this period came
principally from accomplices Walter Richburg and Timothy Cyrus.

In the fall of 1993, a group of drug dealers operating
out of the Fiorentino Housing Project (also known as the Pitkin
projects) (the "Pitkin Projects crew") began competing with the
Mora gang, which had a sales operation or "spot," located near
the project. Mora hired various "hitmen," including Vega, to
retaliate against the Pitman Projects crew. Vega's involvement
included participation in various acts of violence on October 28,
1993, November 8, 1993, and February 10, 1994, which resulted in
injury and death.

Following trial, the jury convicted Vega of all fifteen
counts charged against him, and this Court sentenced him to life
terms on count 1 (18 U.S.C. § 1962(c) (RICO)), count 2 (18 U.S.C.
§ 1962(d) (RICO conspiracy)), count 34 (18 U.S.C. § 1959(a)(1)
(murder in aid of racketeering)), and count 44 (21 U.S.C. § 846
(conspiracy to distribute and possess with intent to distribute

cocaine base and heroin, all relating to the entire scheme)), and to concurrent ten- and twenty-year sentences on the remaining counts.

Subsequently, Vega, together with his codefendants, perfected an unsuccessful appeal. On direct appeal, Vega argued that the Court erred in denying his severance motion, attacked various aspects of a victim's in-court identification of him, and joined with his codefendants in claiming a *Brady* violation. Vega's conviction was affirmed by summary order. *See United States v. Mora*, 152 F.3d 921, 1998 WL 398802 (2d Cir. June 8, 1998).

In June 1999, Vega moved to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, which this Court denied in a 39-page Memorandum and Order dated September 29, 2001, *Vega v. United States*, CV-99-3229 (CPS)(E.D.N.Y. September 29, 2001). In his habeas petition, Vega claimed ineffective assistance of counsel, erroneous jury instruction on the elements of aiding and abetting, prosecutorial misconduct, improper testimony of key prosecution witnesses, and insufficient evidence to support a conviction on the count of narcotics distribution. I rejected Vega's ineffective assistance claims on the merits. I found the remaining claims to be procedurally-barred, as Vega failed to raise them on direct appeal and was unable to demonstrate cause for failing to raise the issues or

prejudice resulting therefrom. *Id.* at 34-38. Vega also filed

three separate motions to amend his habeas petition pursuant to

28 U.S.C. § 2242,[3] which I found to be time-barred under the

Antiterrorism and Effective Death Penalty Act, Pub. L. No.

104-132, 110 Stat. 1214 ("AEDPA"). *Id.* at 12-21.

## DISCUSSION

Because Vega is proceeding *pro se*, the court must

afford his papers a "liberal reading" and "interpret them to

raise the strongest arguments that they suggest." *Bennett v.*

*Goord,* 343 F.3d 133, 137 (2d Cir. 2003); *McPherson v. Coombe*, 174

F.3d 276, 280 (2d Cir.1999).

### Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure

allows a court to a relieve a party from final judgment. *See*

Fed. R. Civ. P. 60(b). A motion pursuant to Rule 60(b) is

"addressed to the sound discretion of the district court and [is]

generally granted only upon a showing of exceptional

circumstances." *Mendell, on Behalf of Viacom, Inc. V. Gollust,*

909 F.2d 724, 731 (2d Cir.1990). "Evidence in support of the

motion to vacate a final judgment [must] be highly convincing,"

---

[3] In the three amendments to his petition, Vega claimed that: (1)his
sentences were contrary to the new rule of criminal law established by the
Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466 (2000); (2) his counsel
was ineffective for failing to request a special verdict form; and (3)his
firearm convictions (counts 35 and 43) should be vacated in light of *Castillo*
*v. United States*, 530 U.S. 120 (2000), because the indictment omitted an
essential element of the offense, *i.e.*, the type of firearm used.

*Kotlicky v. United States Fidelity Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987); *Raposo v. United States,* 2005 WL 292750, at *2 (S.D.N.Y. 2005)(the "highly convincing" evidence requirement also applies to *pro se* litigants)(citing cases).

"A true Rule 60(b) motion must be predicated on one of five narrow and specific grounds or on a sixth ground which, despite its open wording, has been narrowly cabined by the precedent of this Court." *Harris,* 367 F.3d at 80. They include the following:

> (1)mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence...;(3) fraud...; (4) the judgment is void;(5)the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ.P. 60(b); *see also Harris,* 367 F.3d at 80; *Rodriguez,* 252 F.3d at 199. Vega identifies subsections (5) and (6) as grounds on which to reopen his habeas proceeding. (Vega Motion, at 1).

Before the merits of the present motion can be assessed, it must be determined whether the motion is appropriately brought under Rule 60(b). The Second Circuit has explained that "a motion under Rule 60(b) and a petition for habeas have different objectives." *Rodriguez v. Mitchell,* 252 F.3d 191, 198 (2d Cir. 2001). "Relief under Rule 60(b) is

available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction." *Harris v. United States,* 367 F.3d 74, 77 (2d Cir.2004)(movant alleged ineffective assistance of habeas counsel), *citing Rodriguez,* 252 F.3d at 198 (2d Cir. 2001); *see also Gitten v. United States,* 311 F.3d 529, 534 (2d Cir. 2002). If the motion relates to the integrity of the conviction (or sentence) and not the prior habeas proceeding, then the motion is, in actuality, a successive § 2255 petition and must meet the criteria set forth in the AEDPA.[4] In *Gitten,* the Second Circuit cautioned district courts "not [to] recharacterize a portion of the 60(b) motion as a second or successive collateral attack and transfer it...until the prisoner has been informed of the district court's intent to transfer and afforded a sufficient opportunity to avoid the transfer." *Gitten*, 311 F.3d at 534. "[T]he court always has the alternative of simply denying, as beyond the scope of Rule 60(b)...the portion believed to present new attacks on the conviction." *Id.*

## Analysis of Vega's Claims

Vega claims that in light of the Supreme Court's

---

[4] To file a second or successive § 2255 motion, the movant must first file an application with the appropriate court of appeals for an order authorizing the district court to consider it. *See* 28 U.S.C. § 2255; 28 U.S.C. § 2244(b)(3)(A).

holding in *Blakely v. Washington,* this Court "erred in sentencing
[him] to Counts 31, 34, and 44...based on the Judge's finding of
aggravating facts, without a jury determining those facts
...beyond a reasonable doubt." (Vega Motion at 5). Vega, in his
supporting memorandum, uses the umbrella heading of "*Blakely*" for
all his arguments. However, he also raises the following grounds
for attacking the sentences imposed on Counts 31, 35, 34 and 44.

Counts 31 and 35 charged Vega with violating 18 U.S.C.
§ 924(c)(1).[5] Count 31 charged use of a destructive device (a
grenade) on October 28, 1993, and Count 35 charged Vega with use
and carrying of a firearm on that same day.[6] Vega contends that
"the indictment should have charged Count 35 as the first of the
multiple violations of 18 U.S.C. § 924(c), not Count 31," because
that was the chronology in which they occurred. (Vega Motion at
8).[7] Vega also claims that second or subsequent convictions

_____

[5] Also, Count 38 charged use and carrying of a firearm on November 8,
1994, and Count 43 charged use and carrying of a firearm on February 10, 1994.

[6] Under the version of Section 924(c) that was applicable at the time
of Vega's sentencing, the first conviction for use and carrying of a firearm
was punishable by a five-year term of imprisonment consecutive to any other
term, while a "second or subsequent conviction" was punishable by a 20-year
term consecutive to all other terms, including those from other Section 924
(c) convictions. If the firearm was a "destructive device," such as a
grenade, there was a mandatory 30-year consecutive term if it was the first
924(c) conviction, and a life term if it was a second or subsequent 924(c)
conviction.

[7] The government contends that Vega's argument, even if it were
appropriately brought in the context of this motion, lacks merit because the
sequence of the counts--31 before 35--presented to the jury actually served to
reduce Vega's sentence. Had Count 31 (the "destructive device" count) been
second, then the sentence on that count would have been a life term instead of

under Section 924(c) should be "treated as an element of the aggravated offense...that must be charged in the indictment and submitted to a jury." (Vega Motion at 10).

Count 34 charged Vega with murder in aid of racketeering (18 U.S.C. § 1959), for the murder of Wayne Smith on October 28, 1993, in violation of New York Penal Law. Vega argues that because Count 34 failed to charge "malice aforethought" in the indictment, he should have been sentenced for second degree murder, with a base offense level of 33, rather than first degree murder, with a base offense level of 43. (Vega Motion at 12-13). In regards to Count 44, conspiracy to distribute and possess with intent to distribute heroin and cocaine base, Vega claims that under *United States v. Orozco-Prada,* 732 F.2d 1076 (2d Cir. 1984) and *United States v. Barnes,* 158 F.3d 662 (2d Cir. 1998),[8] the Court should have sentenced Vega only in relation to the heroin, because it carried the more lenient statutorily prescribed sentence.[9] (Vega Memo at 17).

_____

thirty years. (*See* Govt. Response at 8).

[8] These cases hold that where a conspiracy to possess different controlled substances is alleged in a single count of an indictment, and "where a general verdict of guilty does not tell [a court] whether the jury convicted the defendant of [conspiracy to possess] each of them...[a court] assumes that the conviction is for conspiracy to possess the controlled substance that carries the most lenient statutorily prescribed sentence." *Barnes*, 158 F.3d at 668 (citing *Orozco-Prada*).

[9] The government contends that Vega's argument, even if it were appropriately brought in the context of this motion, lacks merit because in Vega's case, unlike in *Orozco-Prada* and *Barnes*, both substances were involved in amounts justifying the imposition of a life sentence under 21 U.S.C. § 841 (b)(1)(A). (*See* Govt. Response at 10).

Reviewing Vega's *pro se* submissions liberally, it is clear that the asserted grounds do not attack the integrity of his prior habeas proceeding. Vega does not claim any defect in this Court's determination of his habeas petition. The issues raised in the present motion were not even raised in the prior habeas proceeding.[10] Instead, Vega presents new attacks on his underlying conviction and sentence. Accordingly, these claims are denied as "beyond the scope of Rule 60(b)." *Gitten,* 311 F.3d at 534. If Vega wishes to have the substance of these challenges considered, he must gain the authorization of the Second Circuit Court of Appeals for leave to file a second or successive § 2255 petition.[11]

## CONCLUSION

For the foregoing reasons, the motion is denied. The Clerk is directed to send a copy of this decision to the movant

---

[10] Vega did, however, previously argue that his counsel was ineffective for failing to object at sentencing to a base offense level of 43 for Count 34 (murder in aid of racketeering) on the grounds that the murder was not committed with malice aforethought. *See* September 2001 Opinion at 33. I rejected that claim, finding that Vega's counsel did in fact object at sentencing to the base offense level of 43. *Id.* Vega does not argue in this motion for reconsideration that the Court erred in denying his ineffective assistance claim.

[11] I note, however, that in a recent decision, *Green v. United States,* 397 F.3d 101 (2d Cir. 2005), the Second Circuit denied a petitioner's application to file second or successive § 2255 petition based on *Blakely* and *United States v Booker,* 125 S.Ct. 738 (2005) because "neither *Blakely* nor *Booker* established a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review." *Id.*

and counsel for the United States.

          SO ORDERED.

Dated :  Brooklyn, New York
         May  10, 2005

                         By: /s/Charles P. Sifton (electronically signed)
                                  United States District Judge